Robert Lichty on behalf of John Jordan. Every arrest has a reason, but in this case there was a dispute as to why Mr. Jordan was arrested. He says he was arrested because he was criticizing the officers. Actually, he was ridiculing them in some of his language. The trial court said that he was arrested for yelling too loudly and for not leaving the scene. So we have a dispute as to why he was arrested. Now, the reason for the arrest is not to be confused with the intent, you intent is irrelevant to the Fourth Amendment objective reasonableness inquiry. Nonetheless, the reason for Mr. Jordan's arrest is in dispute and should have been resolved by a jury. Defendants did not address this dispute in their response brief. And I am here to respond to the following points that I hope defendants will address today. And if they don't, I hope the court will ask them their position on these two points. Why does Houston v. Hill, the Supreme Court case, not control Mr. Jordan's claim herein? Number two, under what circumstances may officers tackle a non-resisting passive suspect, as you were referring to in the prior case, in the Casey situation? Now, unless the court has questions, I would like to reserve my time to address what I think plaintiffs or defendants will raise in their response to those two questions. I don't think that's appropriate. Make your case. Here's the problem that I have.  They haven't addressed the dispute as to the reason for the arrest in their response brief. I don't know what their position is. Well, you've laid down the challenge. But let me just ask you, why wasn't it reasonable for Deputy Jenkins to take Mr. Jordan to the ground when Mr. Jordan refused to put his hands behind his back? Okay. Good point. I turn to page 9 of the brief where we have the audio tape. We have that transcribed. Mr. Jordan says that he was taken to the ground at 4 minutes 16 seconds. And on the audio tape, that I'm assuming you've listened to, that's where you first hear the Mr. Jenkins says, put your hands behind your back. And then again, put your hands behind your back. And then half a second, half a minute later, he again says, put your hands behind your back. He's already on the ground. He's been tackled. Because Mr. Jordan says in his declaration, paragraph 8, he says that he was tackled to the ground at 4 minutes 16 seconds when you hear the sounds of the scuffle. So he was taken, he was already under, he was already seized when the officer was asking him to put his hands behind his back. And there may be some confusion here. He was on the ground on a hands and knees position, but only a three-point. One of his hands already had a handcuff on. It was behind his back. And Officer Jenkins is saying, put your hands behind your back. He wants the other hand behind his back. But if he does that, then he smashes his head in the ground. Well, that ended up happening because his remaining hand was kicked out from underneath him, and then they got the hands behind the back. But that's the facts of the case that the court has to take because those are plainest facts. I mean, that's in the declaration. It's perfectly consistent with the audio tape. And getting back to your point, Judge Hartz, I need to put out my case. But the problem is I don't know what defendant's argument is. There are two versions of the arrest. In our version, Mr. Jordan was arrested because he was ridiculing the police. And it makes perfect sense because when you listen to the audio tape, you can see the officer is not pleased at all with Mr. Jordan's criticism of him. He says, you're a horrible father. He mixes it up. But you know that the officer is not pleased at all. The question, though, isn't it, is whether the officer had probable cause to arrest him. Yes. And the fact that the officer was displeased because the officer was being ridiculed, it's not a fact relevant to the probable cause. No. It's very relevant, and it goes back to my opening statement. What is the reason for the arrest? Was he arrested for criticizing the officers? Do you disagree with the proposition that probable cause is determined without looking to the subjective state of mind of the officer? Do you disagree with that proposition? I disagree with it on this point. No, I understand. And that's why I said not to be confused with malicious intent. The officer has to have a reason for what he does. He doesn't have to have it subjectively, though. No. If the facts show a proper reason for the arrest, then whatever is going through his mind is not relevant. But we have two reasons for the arrest. We have a dispute as to why he was arrested. Well, if one of them is supported by the facts and provides probable cause, then the arrest was lawful. Okay. Good point. On that, I would say that their reason is not supported by the facts, because they say he was yelling so loudly that we could not hear the nephew and the other witnesses' response to our questions. Well, that's just not true. And you're saying that's for the jury to decide? Yes. Well, no. The jury decides why was he arrested. As part of that, the jury will also decide. No, no. The jury does not decide. I thought that's what we just went through. The jury doesn't decide why he was arrested. That's irrelevant to the probable cause determination. And you keep repeating it. Okay. The reason he gave, I mean, the reasons that might support probable cause may not be supported by the facts. That's a proper argument to make. Okay. And the jury has to decide what the facts were. Yes. Was he speaking loud enough to interfere with the interview? Yes. Was he giving instructions to his nephew that was interfering with the interview? Correct. Was he, you know? Correct. Things like that. Yes. But the subjective state of the mind of the officer, although you keep repeating that, explain to me why that would be relevant. Because I think that's contrary to settled state law to say it's relevant. And again, that's why I opened up with there were two reasons. There were two basic probable cause determinations. One, was he arrested for actual interference because he was too loud, because he was telling the witnesses, don't answer their questions. None of that's in the record, by the way. We had that from the audio tape. What's not in the record? That he said that? Yeah. No, he did not say, don't answer the officer's questions. Okay. There's no evidence to support that. That's correct. And we have the audio. Well, no, no, no. There is evidence in the officer's written statement. Okay. The officer says that, so that's evidence, but the jury can disregard that because it's inconsistent with the audio tape. Okay. But I still get back to the point of the reason for making the arrest, I believe, is different from what is prohibited in that objective reasonableness inquiry. I think it's different because everyone does something for a reason. And if the reason that you're doing something is unlawful, well, you're going to give a different reason. I mean, you see this all the time in employment cases where you have pretext. That happens all the time. Of course, I mean, if someone did something wrong and they don't want to admit to it, well, they're going to make up some reason as to what they did that will justify what they did. I think that's different from the objective inquiry limitation. Counsel, could I just, could we maybe put this, this is a qualified immunity case. Yes. And could we put this in the context of the second element, the clearly established law element? And when we're talking about probable cause, unlawful seizure, even malicious prosecution, courts have used this notion of arguable probable cause to make the clearly established law decision. Yes. And that's what the court did here in this case. Yes. So why wasn't it reasonable for an officer in the deputy's position here to believe that Mr. Jordan was interfering in their investigation of the accident? What was he doing to interfere? Did he go up and physically touch anybody? No. He told the officers, he told the officers that they shouldn't be making the statement and the witnesses should. Why isn't that, why wouldn't that be interfering? How is that interfering? He's criticizing the officers. Well, one person's criticism might be interference. They need to be able to do their job and he's not, he's interfering. It's the same thing that happened in Houston v. Hill. But the question is whether a reasonable officer in their position would have seen that as interference. Isn't that what arguable probable cause is? Well, not when it violates Houston v. Hill. And that's, remember, in Houston v. Hill, the plaintiff was telling the cops, don't do that to my friend Charles. And he said, you know, pick on someone your own size like me. He's trying, and he admitted, I was trying to interfere with what the officers were doing with Charles. Are you using that case to say that this is a First Amendment issue? Yes. Well, you didn't allege any First Amendment violation. No, no, we did not allege a First Amendment violation. We alleged a Fourth Amendment violation because he had a First Amendment right to criticize the officers. So we were not saying that the damages were based upon something that happened to his First Amendment rights. So if I can paraphrase you then, criticizing officers may in fact interfere in some way, but it's a protected right. So the law doesn't permit you to arrest someone for interference when the interference is ridiculed. Exactly. How is interference a protected activity? How is it? How is it protected speech if it is in fact interfering with an investigation? Read Huston v. Hagley. I read it. He admits, yeah, I was trying to interfere with the officer. I was trying to stop the officer from doing what he was doing. In our case, Mr. Jordan was actually aiding the investigation by trying to get the insurance for the car. He wasn't telling the officers, or he wasn't telling the witnesses, don't talk to the officers. He was telling the officers, listen, don't you tell them what happened. Ask them what happened. How can that be interference? It's criticizing the officers. How can that be interference? Well, but again, maybe that gives you an argument on prong one, but is it enough to make out a violation of clearly established law? Yeah. Why? Because it was clearly established in Huston v. Hill. So you're relying on that case for clearly established law. Is that correct? Yes. All right. And I'm relying on Judge Hart's statement of what the issue is. The difficulty for me is that the Supreme Court has established that there is a constitutional right to verbally accuse police of acting unconstitutionally. It's a constitutionally protected right. But where does it go too far? I mean, so you see the cops beating up somebody in the road. I think Huston v. Hill would say, you have, and that's a Supreme Court case, would say, you have the right to start yelling at the cops. You can't beat that guy up. Yes. But what if the criticism then goes further and says, not that he's beating somebody up, but they're trying to question somebody who is confused and crying, and the officer is yelling at her, confess this, confess that, or give us the evidence, and somebody comes up and yells from across the street, you officers are abusing her, and then says, she doesn't have to answer that question. Lady, you do not need to answer the officer's questions. And at what point does the officer say, I've got a constitutional right to secure the crime scene, and that includes you're not advising somebody to act what appears to be contrary to my ability to be a police officer. So where do you draw that line? Well, those facts are not the facts in this case. We know that. Well, I'm not sure. I mean, it's hard to know what his statement is, how they were interpreted by the various parties. He never made that statement. He never said to the witnesses, don't answer the police officers, don't cooperate with the police officers. He never said anything like that. In the police report written by Officer Jenkins, Officer Jenkins suggests that, but there's no evidence of it in the audio tape. So you don't need to draw that line in this case. I understand your input, Counselor. Your time has expired. Thank you. Mr. Sink. Good afternoon. May it please the Court, I'm Michael Sink on behalf of the Adams County Sheriff's Deputies, who are the employees in this case. I think, Judge Hartz, your central point is an important one to reaffirm before moving on to some of my colleague's other arguments, which is that subjective intent is not a relevant variable at the summary judgment determination or on qualified immunity. Now, I think even setting aside my colleague's argument on that point, I still think he's attempting to make a separate legal argument, if I've understood him correctly, which is that in the Graham analysis, can you ever use, at least for purposes of his Fourth Amendment claim, can you ever use any force at all to secure an arrest if the basis for the charge was constitutionally impermissible to begin with? It's almost as if you're taking the Graham factors and pushing them to their vanishing point. I saw it a little differently. Maybe I'll be saying the same thing you are. But if the arrest was unlawful, if he had no right, if the officer had no right to order the plaintiff to leave, or if he had no right to order him to leave, then he had no right to use any force whatsoever. And I thought that was the issue here. And what he's arguing is a jury should be able to determine what happened here and decide whether, as Judge Matheson pointed, whether he could—not matter—arguable probable cause. And so there's some factual components to determine whether there's an arguable probable cause. There is a probable cause to arrest if someone is simply criticizing officers performing their duty. Do you agree with that? I do agree with the last statement Your Honor made. Yeah, I agree with everything I've said today. I want to make one point clear as to the Fourth Amendment portion, though, before we move on. However one phrases what my colleague's argument might be, which is that in Cortez v. McCulley, the en banc decision from this court, one of the things the court was confronted with were officers who took husband and wife under arrest. And the district court judge held that it was an arrest. The Court of Appeals, on appeal, affirmed that it was an arrest. But the officers at the time didn't think they were arresting the suspects by putting them in the back of the car. Now a series of claims were made, one of which was, was an arrest occurred. The court ruled absolutely an arrest occurred. But the court then had to confront the follow-up excessive force claim. And there the court said that even if there wasn't probable cause for the arrest, the analysis for Fourth Amendment purposes still has to be on the assumption that they did. Because otherwise the Fourth Amendment portion collapses back into the unlawful arrest claim. And that's at page 1126 of the Cortez case. Thus the excessive force inquiry elevates the force used in a given arrest, tension reasonably necessary to effect a lawful arrest. In a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no force, more force than would have been reasonably necessary if the arrest or detention had been warranted, the plaintiff has a claim for unlawful arrest detention, but not an additional claim for excessive force. And that's. But if you, if you have a claim for unlawful arrest, the damages you recover can include any injuries from excessive, from excessive force. Correct. And I thought that's really what's going on in this case. In the reply brief, I believe Mr. Jordan is attempting to argue that there were no cases on qualified immunity on point two of excessive force, and there need not be because of Hill. And if Hill applies, the rest was unlawful and therefore any force was per se improper. But that's not the Cortez analysis. The Cortez analysis requires still a case that says this escalation of force in these circumstances was improper, even on the assumption that they did have probable cause. So you're saying even if the law was clearly established that this was an unlawful arrest. Plaintiff here would not have. Let me put it the other way. Even if the law is clearly established that this was an unlawful arrest, your client could still have qualified immunity on excessive force to secure that arrest. That is my understanding of Cortez. Now, even if you take my colleague's argument that all three claims that are on appeal rise or fall with Hill, even if they all rise or fall with Hill, then the question has to become whether or not Hill stands in support for the proposition he asserts. Now, as has already been acknowledged, Hill is a case that's a First Amendment overbreadth case. So although there are facts recited in Hill, they make little difference to the actual outcome in the case because the court decides that the Houston municipal ordinance is impermissibly overwrought on its face. Secondarily, a key concession that was necessary to make that determination in the Houston case was that portions of that statute which cover things like interference or contact with the officer were preempted out because there were duplicative statutes they could have been charged under but weren't. And that was a concession that was acknowledged, I believe, in one of the court's footnotes, footnote nine. And the court goes so far as to say, well, we're not considering a statute that might not have some of those clauses dropped out. But even still, even if you took Hill as a First Amendment case that should be applied to a probable cause analysis, even though it's overbroad, and even if you took Hill's statement about when is it impermissible, how far does the criticizing individual have to go to justify an arrest, there is a footnote, footnote 11, which is the footnote from Hill that is often trained on in some of these circumstances, which is the court is responding to Justice Powell and so Justice Powell's concerns about where you draw the line, some of the very questions you've been asking here. And in response, they talk about, in any case, today's decision does not leave municipalities powerless to punish physical obstruction of police action. Now, my colleague reads that as requiring physical touching of the police officers. But a reading of the footnote in Hill reveals that that is not what the court has in mind. For example, Justice Powell states that a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempts to engage the officer in conversation while the officer is directing traffic at a busy intersection. We agree, however, that such conduct might be constitutionally punished under a properly tailored statute, such as a disorderly conduct statute that makes it unlawful to fail to disperse in response to a valid police order or to create a traffic hazard. What a municipality may not do, however, and what Houston has done in this case, is to attempt to punish such conduct by broadly criminalizing speech directed to an officer, in this case by authorizing the police to arrest a person who in any manner verbally interrupts an officer. That was the holding in Houston. The footnote in Houston is far more applicable to the facts of this case, and they do not establish clearly established law that would reasonably indicate to the officers here that they did not have arguable probable cause that Mr. Jordan engaged in one of three bad acts. First, he interfered with the deputy's ability to conduct an investigation. There is a small factual issue on this one, but what is uncontested from the deputy's report is that not once but twice they had to cease interviewing the nephew to come over and deal with the uncle. Well, they had to. Well, they chose to. If the court wants to, they chose to because he was then secondarily in the report. He was impeding their ability to talk to third-party witnesses. Now, the nephew in his affidavit contests one portion of it, and he says the shouting didn't interfere with my ability to be interviewed by the deputy. That's at most as far as the affidavit goes, but the rest of the reports still stand. Now, as for the audio, Mr. Jordan also concedes in his affidavit that that audio does not pick up until somewhere between the three- and five-minute mark after the exchange occurs. So you can't use that portion of the audio as to two participants in a conversation to wipe out all the other evidence that came in uncontested from the officers as to what happened. So the district court was prudent and correct to be able to say at some level there was interference with an investigation. That investigation, moreover, was not just some peaceful investigation in a police station. It was on a busy intersection where you could see in the video cars still passing by. Stop for one second. Is there nothing in that audio that contradicts the officer's account? There are two things I think that the appellant has pointed to as causing some conflict. The first is whether or not Mr. Jordan stated that someone should start filming, and that isn't picked up in the audio file. So that's one point where they point that's an inconsistency between the report. Should he start filming? Filming. Filming. That's what creates the eventual video that we see in the record. And the second piece is there is some dispute as to the sequence of the orders for Mr. Jordan to put his hands behind the back versus when the initial contact is made. There is some disagreement as to whether it was after the second one or after the first. But other than those two elements, the record is consistent with what the officers say as to the time period at issue in the audio. As to the other time periods, there is no contradicting testimony or record that the court could look at to overturn that material. Okay. What you've been talking about the last few minutes, though, goes to the claim for an unlawful seizure, correct? And my view of the case, Your Honor, yes. And my colleague's view of the case, I think he thinks it goes to all three. All right. Let me ask you about on excessive force, and this does go to counsel's statement about the audio. Is it disputed whether Mr. Jordan heard Deputy Jenkins order to put his hands behind his back? Well, did he hear him make that order at all? But as I understood the argument this morning, the claim was that this happened after he was already tackled. Can you speak to that? In the complaint, by way of background, there was an allegation that made the initial encounter between Deputy Jenkins and Mr. Jordan to be what I might call an instantaneous tackle, that at the 416 mark of the audio tape, you hear the sound of a scuffle, and that's the moment when Mr. Jordan's on the ground. But even if you take just Mr. Jordan's affidavit on the point, several things become clear. First, an instruction is given. He argues that he didn't hear it. Then in his deposition, he says he turned, he responded to something. Deputy Jenkins says that's the second order. But even if the content comes right at the moment of the second order, what Mr. Jordan says happens then is that he grabs him by the arm. In fact, he describes this deputy as trying to swat the phone out of his arm, and that eventually when he went to the ground, the deputy by that point had his arm behind him. And when he means go to the ground, what he means is he drops to his knees. Then from his knees, after another order is given, he drops to his hand, and then presumably another order is given just by the sequence of the audio, and then they do a leg sweep and his face goes down into the garden or grass area adjacent to the house. So that's the sequence of events. Now, exactly the moment of when the order made versus the first contact with Mr. Jordan's arm is a disputed fact. But what isn't disputed is that it came after at least one lawful order to put his hands behind his back. Now, whether he heard the first order, there is no evidence in the record other than the fact that it is undisputed the order was made. And I know of no qualified immunity case law with factual symmetry, if that's the preferred term, that establishes that the witness has to hear it, provided that it's undisputed that it was made. It's on the recording. No one disputes it. And it may have been after the second order as well. Which brings us back to what Mr. Jordan was being arrested for. In part, it was the interference and the disruption of an ongoing investigation in a traffic scene. In part, he's not a disinterested bystander. He's, in fact, trying to coach his nephew about how to respond in an accident, where he himself has some potential liability as the person who lent the vehicle to his son. And on top of that, the law enforcement officers, after giving him up to nine minutes by Mr. Jordan's own statements, gives him an order to go. And he refuses to go. And it's at that point in time, after nine minutes, multiple interactions with Mr. Jordan, that they make the request. He doesn't comply with the request to put his hands behind his back. The officer was justified in using sufficient force to bring him into custody. That begins with an initial contact on his arm. Mr. Jordan doesn't comply. And it escalates, however quickly and whatever sequence, into a takedown maneuver, incrementally where successive orders are being made, and he doesn't comply. That is more than enough to justify, on the first prong, that they used appropriate force in support of arguable probable cause. But even still, the plaintiffs didn't provide distinct case law at summary judgment to argue that it was clearly established that these were violations of the Constitution. Thank you. That was pretty good timing there. Thank you, Counsel. Does Ellen have some more time? No. No, that's right. Unless you want to give me something. It's late. Thank you very much, Counsel. Case is submitted. Counselor excused. Court is in recess until 9 tomorrow morning.